UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| - v. - | Case No. 7:13-CR-00297-KMK-2 |
| MALCOLM A. SMITH, <br> DANIEL J. HALLORAN, <br> VINCENT TABONE, <br> JOSEPH J. SAVINO, <br> NORAMIE JASMIN, <br> JOSEPH DESMARET, | AFFIRMATION IN SUPPORT OF <br> DANIEL J. HALLORAN'S <br> MOTION TO DISMISS |
| Defendants. | |

VINOO P. VARGHESE, an attorney duly admitted to practice law in the State of New York and the United States District Court for the Southern District of New York, affirms as follows under penalty of perjury:

1. I am the principal at Varghese & Associates, P.C., attorneys for the defendant Daniel J. Halloran in this action, and am personally familiar with the facts herein stated.

2. I make this affirmation in support of Mr. Halloran's motion to dismiss the indictment.

**JURISDICTION AND VENUE**

3. The U.S. District Court for the Southern District of New York has jurisdiction pursuant 18 U.S.C. §§ 371, 1343, 1346, and 1952.

4. Venue lies with this Court pursuant to 18 U.S.C. §§ 371, 1343, 1346, and 1952. Certain of the acts, practices, transactions, and courses of business in the indictment allegedly occurred within the Southern District of New York.

## PROCEDURAL HISTORY

5. On March 29, 2013, Special Agent Thomas Holmes of the Federal Bureau of Investigation swore out a complaint (the "criminal complaint") against Malcolm A. Smith, Daniel J. Halloran, Vincent Tabone, Joseph J. Savino, Noramie Jasmin, and Joseph Desmaret. See criminal complaint, ¶¶ 1-15.

6. On April 18, 2013, the United States Attorney for the Southern District of New York (the "government") filed a ten-count indictment (the "indictment") against Messrs. Halloran, Smith, Tabone, Savino, Desmaret, and Ms. Jasmin. See indictment, ¶¶ 1-4, 57-79.

7. Counts one, two, three, five, and six of the indictment allege crimes against Mr. Halloran. Indictment, ¶¶ 57-79.

8. Count One alleges that Messrs. Smith, Halloran, Tabone, and Savino conspired to commit wire fraud and bribery in violation of 18 U.S.C. §§ 371, 1343, 1346, and 1952. Indictment, ¶ 58. The conspiracy charge in Count One is based on allegations of: (1) honest services fraud; and (2) violations of New York Penal Law §§ 200.45 and 200.50. Id. at ¶¶ 59-60.

9. Count Three alleges that Messrs. Smith, Halloran, Tabone, and Savino violated 18 U.S.C. § 1952 (the "Travel Act") by travelling and using interstate facilities to commit bribery. Indictment, ¶ 63. The Travel Act violation is based on allegations that Messrs. Smith, Halloran, Tabone, and Savino violated Penal Law §§ 200.45 and 200.50. Id. at ¶ 65.

## FACTUAL ALLEGATIONS

10. The government alleges that Mr. Halloran, along with the other defendants, "engaged in three separate, but related bribery schemes." Indictment, ¶ 5. The government dubs these three bribery schemes: (1) "The Spring Valley Real Estate Project Scheme;" (2) "The New York City Council Consulting Contract Bribe Scheme;" and (3) "The Conspiracy to Bribe New York City Political Party Officials." Id. at ¶¶ 5, 6, 20, 26.

11. We identify the "Conspiracy to Bribe New York City Political Party Officials" as the "Wilson Pakula Proposal" in these motion papers. This is because the events, counts, and charges associated with the Wilson Pakula Proposal also encompass non-conspiracy based allegations, such as the Travel Act violation alleged in Count Three.

12. As part of the Wilson Pakula Proposal, the government alleges that Mr. Halloran assisted Mr. Smith "in bribing committee leaders [of the Republican Party] by arranging meetings with them and negotiating bribe payments." Indictment, ¶ 5(a). Mr. Halloran purportedly assisted Mr. Smith, in exchange for payments. Id.

13. As part of the New York City Council Consulting Contract Bribe Scheme, the government claims that Mr. Halloran "accepted bribes in exchange for his use of his office as a New York City Council Member to allocate City funds to a company he understood was controlled by" an undercover and a cooperating witness. Indictment, ¶ 5(b).

14. The government never alleges that Mr. Halloran did anything in furtherance of the Spring Valley Real Estate Project Scheme. Indictment, ¶¶ 5(c), 6-19. The government never mentions Mr. Halloran in any description of the supposed Spring Valley Real Estate Project Scheme. Id.

15. This motion to dismiss addresses only those counts related to the Wilson Pakula Proposal as described in paragraphs 26-56 of the indictment.  In that proposal, Mr. Smith reportedly told a cooperator that Mr. Smith wanted to meet with New York City Republican Party county committee leaders to discuss obtaining a certificate of authorization, also known as a "Wilson Pakula certificate."  Indictment, ¶ 27.  A Wilson Pakula certificate is an authorization given by a political party to a person who is not a party member allowing that person to file a designating petition in order to seek office as a candidate of that party.  See N.Y. Elec. Law § 6-120.

16. According to the indictment, on November 16, 2012, Mr. Halloran told an undercover that Mr. Halloran could find out what it would take to get Mr. Smith the support of two persons for a Wilson Pakula certificate: Mr. Savino and an unnamed county committee leader ("County Chairman #1").  Indictment, ¶ 30.

17. On January 25, 2013, a second undercover supposedly delivered money to Mr. Halloran in exchange for Mr. Halloran arranging meetings with Messrs. Tabone and Savino to secure the Wilson Pakula certificate.  Indictment, ¶ 33.

18. On January 31, 2013, Mr. Halloran purportedly told the undercover the amount that Messrs. Tabone and Savino would require in order for them to push for Mr. Smith to receive a Wilson Pakula certificate.  Indictment, ¶ 34.

19. On February 1, 2013, Messrs. Halloran and Savino, along with the undercover, allegedly discussed that, in order for Mr. Savino to endorse Mr. Smith for a Wilson Pakula certificate, the undercover should either buy insurance from Mr. Savino or his law firm for business.  Indictment, ¶ 35.

20. On February 1, 2013, the undercover, and Messrs. Halloran and Tabone, met and discussed Mr. Tabone assisting in obtaining a Wilson Pakula certificate for Mr. Smith. Indictment, ¶ 36.

21. On February 5, 2013, Mr. Halloran allegedly told the undercover that Messrs. Tabone and Savino would help to get Mr. Smith a Wilson Pakula certificate. Indictment, ¶ 37.

22. On February 8, 2013, Mr. Halloran allegedly told both the cooperator and the undercover the exact payments necessary for Messrs. Tabone and Savino to deliver a Wilson Pakula certificate to Mr. Smith. Indictment, ¶ 38.

23. On February 10, 2013, the undercover paid Mr. Halloran in exchange for setting up meetings with Messrs. Tabone and Savino. Indictment, ¶ 46.

24. On February 14, 2013, the undercover paid Mr. Savino in exchange for a promise for a Wilson Pakula certificate for Mr. Smith. Indictment, ¶ 47. Later that day, the undercover paid Mr. Tabone in exchange for a promise for a Wilson Pakula certificate for Mr. Smith. Id. at ¶¶ 48-49.

25. On February 15, 2013, the undercover allegedly paid Mr. Halloran additional money for arranging the meetings with Messrs. Tabone and Savino. Indictment, ¶ 50.

Dated: August 3, 2013
       New York, New York

                                              Respectfully submitted,

                                              /s/ Vinoo P. Varghese
                                              Vinoo P. Varghese
                                              VARGHESE & ASSOCIATES, P.C.
                                              65 Broadway, 7th Floor
                                              New York, New York 10006
                                              Telephone: (212) 430-6469
                                              Fax: (646) 292-5169

                                              *Attorneys for Daniel J. Halloran*